O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL ACQUISITIONS NETWORK, a Wyoming corporaiton; SHAWN CORNEILLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, a Delaware corporation; ORIANA CAPITAL PARTNERS,LLC, a Connecticut limited liability company; ZANCO, a company of unknown business form, HLB FINANCIAL, LLC, a company of unknown form; W/C INVESTMETN HOLDINGS INC., a Florida corporatin; DEXTER CHAPPELL, an individual; VALERIE CHAPPELL, an individual; JON LEARY, an individual; GLEN McINERNEY also known as LARRY BENNETT, an individual; CHRISTOPHER RAY ZANCO, an individual; BERNARD WOODSON, an individual,<br><br>Defendants. | Case No. CV 12-08758 DDP (CWx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>[Dkt. No. 13] |

Presently before the court is Defendant Bank of America Corporation ("BAC")'s Motion to Set Aside Entry of Default. After

considering the parties' submissions, the court adopts the following order.

**I. BACKGROUND**

Plaintiffs' Complaint seeks damages of $2.5 billion from BAC and other defendants. Plaintiffs allege that they are the owners of two "collateralized mortgage obligations" in the amount of $2.5 billion. They allege that Defendants Dexter Chappell and Oriana Capital Partners ("OCP") agreed to use these "collateralized mortgage obligations" as collateral for an $18 million loan. (Compl. ¶¶ 20, 21, 25.) Chappell, OCP and other defendants allegedly told Plaintiff that they intended to obtain this loan from BAC. (Compl. ¶ 28.) Plaintiffs allege that a BAC Bank Officer informed them by phone that OCP and Chappell had the financial resources to obtain credit line funding for a "non-recourse loan." (Compl. ¶ 36.) In reliance on this assurance of sufficient funding, Plaintiffs transferred their securities to OCP and Chappell. (Compl. ¶ 40.) However, OCP and Chappell did not in fact have the funds through a BAC credit line or through any other resources. (Compl. ¶ 76.) OCP and Chappell kept the securities for themselves. (Compl. ¶ 85.) Plaintiffs assert a number of claims against all Defendants, including claims for negligence, breach of fiduciary duty, and fraudulent inducement.

Plaintiffs filed their Complaint on October 12, 2012. BAC was served on October 16, 2012, making its deadline to respond to the Complaint November 6, 2012. On November 2, 2012, John Amberg, counsel for BAC, contacted counsel for Plaintiffs, Jon Divens, by telephone. Parties agree that the attorneys discussed an extension of time, but they disagree on what the extension was for.

2

1  According to Plaintiffs, Mr. Divens agreed only to a 21-day
2  extension for BAC to file an answer.  According to Defendant BAC,
3  Mr. Divens agreed to a 21-day extension for BAC to respond to the
4  complaint.  That same day, Mr. Amberg emailed Mr. Divens to
5  "confirm our telephone conversation this morning in which you
6  agreed to extend the time for Bank of America to respond to the
7  complaint to and including November 27, 2012."  (Amberg Decl. ¶ 6,
8  Exh. A.)  Mr. Divens does not appear to have responded to this
9  email.
10      On November 5, 2012, BAC counsel sent Mr. Divens a stipulation
11 for a 21-day extension to respond.  (Amberg Decl. ¶ 7, Exh. B.)
12 Having received no response, on November 6, 2012, BAC counsel sent
13 another message regarding the same stipulation.  (Amberg Decl. ¶ 8
14 Exh. C.)  Mr. Divens replied to this email stating, "You may attach
15 my Signature to the stip to allow time to file an answer."  (Amberg
16 Decl. ¶ 8, Exh. D.)  BAC counsel responded that the agreement had
17 been to extend BAC's deadline to respond to the complaint, not
18 merely to answer it.  (Amberg Decl., ¶ 9, Exh. E.)  Mr. Divens then
19 asserted that he had never agreed to this extension, but only to
20 the extension for an answer.  (Amberg Decl., ¶ 10, Exh. F.)
21      The next day, November 7, 2012, Plaintiffs filed a request for
22 the clerk to enter default against BAC.  After Plaintiffs corrected
23 a deficiency, default by clerk was entered on November 14, 2012.
24 **II. LEGAL STANDARD**
25      "The court may set aside an entry of default for good cause."
26 Fed. R. Civ. P. 55(c).  To determine "good cause," a court must
27 consider three factors: "(1) whether the party seeking to set aside
28 the default engaged in culpable conduct that led to the default;

3

(2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010)(internal quotation marks and citation omitted). This standard is disjunctive, "such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." Id. "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Id. (internal quotation marks and citations omitted.)

**III. DISCUSSION**

A. Culpability

The court finds that BAC's conduct was not culpable. The initial email sent by Mr. Amberg to Mr. Divens to confirm their conversation addresses an extension of time to respond to the complaint, not only to submit an answer. (Amberg Decl., Exh. A.) Mr. Divens denies having orally agreed to such extension, but he does not deny having received this confirmation email. This email, taken in conjunction with BAC's other efforts to obtain the stipulation to respond, show that BAC did not behave culpably. The fact that BAC's request came four days before the deadline for the answer does not on its own indicate bad faith.

B. Meritorious Defenses

The court also finds that Defendant BAC did not have "no meritorious defense." "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default

4

judgment is not extraordinarily heavy.  All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: the question whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default. Rather, that question would be the subject of the later litigation." U.S. v. Signed Personal Check. No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1094 (9th Cir. 2010)(internal quotation marks and citations omitted).

    Here, BAC asserts that it has at least six defenses: (1) Plaintiff Global Acquisitions Network lacks standing because its corporate status is "forfeited," meaning that it may not prosecute or defend and action; (2) BAC is a holding company that did not make, purchase, or service any loans, such that it is not a proper defendant; (3) BAC owed Plaintiffs no fiduciary duty because the "relationship between a lending institution and its borrower-client is not fiduciary in nature."  See e.g. Nymark v. Heart Fed. Sav. ¶ Loan Ass'n, 231 Cal. App. 3d 1089, 1092 (1991); (4) BAC owed Plaintiffs no duty of care.  See e.g. id. at 1096; (5) Plaintiffs fail to plead fraud claims with particularity because they fail to plead the "who, what, when, where, and how" that would suggest fraud by BAC, insofar as they do not state the name, title, authority, or location of the purported BAC employee with whom they spoke on the phone; and (6) Accounting is not a cause of action but a remedy, so that claim fails.  (Mot. at 7-8.)

    Although Plaintiffs make arguments that may well be relevant to the ultimate success of these defenses, those issues are more properly the subject of later litigation.  BAC has raised

5

"sufficient facts that, if true, would constitute a defense," and that is all it need do to demonstrate that it does not have "no meritorious defense."

C. Prejudice

Finally, the court finds that setting aside the default would not prejudice Plaintiffs. Plaintiffs argue that they would be prejudiced because a further delay in the investigation of the more than two billion dollars allegedly lost or stolen "has caused and continues to cause severe financial hardship," but it is not clear what hardship in particular would be caused by setting aside the default. (Opp. at 15.)

**IV. CONCLUSION**

The court finds that there is good cause to side aside the default. The Motion is GRANTED.

IT IS SO ORDERED.

Dated: December 14, 2012

DEAN D. PREGERSON
United States District Judge

6