O

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11  GLOBAL ACQUISITIONS NETWORK,  )  Case No. CV 12-08758 DDP (CWx)
    a Wyoming corporation; SHAWN   )
12  CORNEILLE, an individual,      )  **ORDER GRANTING DEFENDANTS' MOTION**
                                   )  **TO DISMISS WITH LEAVE TO AMEND**
13                  Plaintiffs,    )  **CERTAIN CLAIMS**
                                   )
14      v.                         )  [Dkt. No. 21]
                                   )
15  BANK OF AMERICA CORPORATION,   )
    a Delaware corporation;        )
16  ORIANA CAPITAL PARTNERS,LLC,   )
    a Connecticut limited          )
17  liability company; ZANCO, a    )
    company of unknown business    )
18  form, HLB FINANCIAL, LLC, a    )
    company of unknown form; W/C   )
19  INVESTMETN HOLDINGS INC., a    )
    Florida corporatin; DEXTER     )
20  CHAPPELL, an individual;       )
    VALERIE CHAPPELL, an           )
21  individual; JON LEARY, an      )
    individual; GLEN McINERNEY     )
22  also known as LARRY BENNETT,   )
    an individual; CHRISTOPHER     )
23  RAY ZANCO, an individual;      )
    BERNARD WOODSON, an            )
24  individual,                    )
                                   )
25                  Defendants.    )
    _____ )
26

27      Before the Court is Defendant Bank of America Corporation's

28  ("BAC") Motion to Dismiss (Dkt. No. 21) all claims against it by

1  Plaintiffs Global Acquisitions Network ("GAN") and Shawn Corneille,

2  GAN's CEO and President.  BAC's motion is made pursuant to Fed. R.

3  Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).  Plaintiffs' claims

4  against BAC include negligence, breach of fiduciary duty, fraud in

5  the inducement, fraud, intentional and negligent misrepresentation,

6  and conspiracy.[1]  Plaintiffs seek $2.5 billion in damages from BAC

7  and the other defendants, punitive damages, and an accounting.

8  Plaintiffs also brought a claim for conversion (Claim 10) against

9  "All Defendants," but agree with BAC that this claim does not apply

10  to BAC and should be dismissed as to BAC.  Having considered the

11  parties' submissions, the court adopts the following order.

12  **I.   BACKGROUND**

13      Plaintiffs allege the following facts.  Plaintiffs are the

14  owners of two collateralized mortgage obligations ("CMOs") that

15  have a combined face value of approximately $2.5 billion.  (Compl.

16  ¶ 20.)  Defendants Dexter Chappell and Oriana Capital Partners

17  (collectively, the "Oriana Defendants") agreed to use the CMOs as

18  collateral for an approximately $18 million non-recourse loan to

19  Plaintiffs.  (Compl. ¶¶ 21, 25.)  After one year, the CMOs would be

20  returned to Plaintiffs.  (Compl. ¶ 22.)  The Oriana Defendants told

21  Plaintiffs that they would be the only parties funding the loan,

22  and that they would obtain a line of credit from Bank of

23  America/Merrill Lynch to do so.  (Compl. ¶¶ 27, 28.)  The parties

24  executed a written contract for this transaction, which was dated

25

26  _____

27      [1] Plaintiffs' complaint names a number of additional
    defendants and includes certain other claims not brought against

28  BAC.  Many of the other defendants were voluntarily dismissed by
    Plaintiffs on January 2, 2013.  (Dkt. 23.)

effective February 1, 2012.[2]  (Compl. ¶ 41 & Ex. 1.)  The agreement provided that within 24 hours of its execution, Plaintiffs would transfer the CMOs to the Oriana Defendants' account,[3] and Oriana would transfer the loan funds five to ten days later.  (Compl. ¶¶ 41, 42 & Ex. 1 ¶¶ 5, 7.)

Before entering into the contractual agreement for the loan and before transferring the CMOs, Plaintiffs told the Oriana Defendants that they would need an assurance from Bank of America/Merrill Lynch that the Oriana Defendants had the financial capacity to obtain the financing for the loan or to fund it in cash themselves.  (Compl. ¶¶ 29, 31.)  To address Plaintiffs' concerns, a conference call was allegedly held on February 9, 2012, at approximately 7:56 a.m., between Plaintiffs, the Oriana Defendants, and a Bank of America Bank Officer whose name Plaintiffs believe was Tom Hazlet or Hazlit.  (Compl. ¶¶ 33, 34.)  The call was identified as originating from the number 800-432-1000, which Plaintiffs allege is a Bank of America phone number.  (Compl. ¶ 33.)  During this call, both the Oriana Defendants and the Bank Officer, Hazlet or Hazlit, told Plaintiffs that Bank of America was the primary financial institution with which the Oriana Defendants did business and that it would be the institution funding the

---

[2] An addendum to the agreement includes a provision modifying the effective date of the agreement to February 22, 2012.  (Compl. ¶ 51 & Ex. 4.)  The copy of that addendum included in Exhibit 4 of the complaint is signed only by Defendant Chappell; Plaintiff Corneille's signature line is blank.  (Ex. 4.)

[3] The parties executed multiple addenda to the agreement that both added other entities as lenders and changed the account to which Plaintiffs should transfer the CMOs.  The account was changed from a first Fidelity account to an E*Trade account and then to a Fidelity account with a different number than the first.  (Compl. ¶¶ 48-52 & Ex. 4.)

credit line for Plaintiffs' non-recourse loan.  (Compl. ¶ 35.)
Additionally, the Bank Officer stated that the Oriana Defendants
had access to a credit line and had the financial resources to fund
the loan.  (Compl. ¶ 37.)

     Based on these assurances from the Oriana Defendants and the
Bank of America Bank Officer, Plaintiffs decided to transfer the
CMOs to the Oriana Defendants.  The CMOs were delivered to the
Fidelity account designated by the Oriana Defendants between
February 27 and 29, 2012, and they confirmed receipt of the CMOs.
(Compl. ¶¶ 40, 46, 47 & Ex. 3.)  On March 12, 2012, the Oriana
Defendants told Plaintiffs that they would be unable to fund the
loan within the contractually required time period, so the parties
agreed to extend the payout deadline to April 18.  (Compl. ¶¶ 52,
53.)

     By May 30, the Oriana Defendants still had not made the loan
to Plaintiffs.  (Compl. ¶ 57.)  Over the next couple of months, the
parties communicated, primarily through counsel, by phone and email
about the status of the loan and the CMOs.  The Oriana Defendants
continually stated that they would disburse the loan funds soon,
and they provided a series of excuses for their continual failure
to do so, including delays caused by Bank of America procedures.
(Compl. ¶¶ 58-61, 73-75.)  Over the course of this communication,
Plaintiffs learned that the Fidelity account to which they had
transferred the CMOs was actually owned by a third party.  Oriana's
name had been added to the account, but the Oriana Defendants
informed Plaintiffs that, as of July 7, 2012, the account had been
closed and Oriana was unable to obtain any details about the
closure because Defendant Chappell was not listed as an account

1   holder.  (Compl. ¶¶ 65, 66.)  At that time, the Oriana Defendants

2   stated that they did not know what had happened to the CMOs or

3   where they were located.  (Compl. ¶ 67.)  Eventually, in an August

4   6, 2012, email,[4] counsel for the Oriana Defendants admitted that

5   they misrepresented their ability to fund the loan through a Bank

6   of America credit line or with their own funds, but contended that

7   the CMOs were never received in the Fidelity account.  (Compl. ¶

8   76.)  As of the time of the filing of Plaintiff's complaint in

9   October 2012, the Oriana Defendants still had not paid the loan or

10  returned the CMOs, and Plaintiffs did not know where the CMOs were

11  located.  (Compl. ¶¶ 85, 86.)

12  **II.  LEGAL STANDARDS**

13      A complaint may be dismissed for failure to state a claim upon

14  which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To

15  survive a motion to dismiss, a complaint must contain sufficient

16  factual matter, accepted as true, to 'state a claim to relief that

17  is plausible on its face.'  A claim has facial plausibility when

18  the plaintiff pleads factual content that allows the court to draw

19  the reasonable inference that the defendant is liable for the

20  misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

21  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

22   Although the court must accept as true all of the factual

23  allegations in a complaint, that principle "is inapplicable to

24  legal conclusions.  Threadbare recitals of the elements of a cause

25  of action, supported by mere conclusory statements, do not

26

27      [4] This August 6, 2012 email is not included with the other
28  email correspondence attached as the fifth exhibit to Plaintiffs'
    complaint.

5

1  suffice." *Id.*

2      To determine whether a complaint states a claim sufficient to

3  withstand dismissal, a court considers the contents of the

4  complaint and its attached exhibits, documents incorporated into

5  the complaint by reference, and matters properly subject to

6  judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

7  U.S. 308, 322-23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668,

8  688 (9th Cir. 2001).

9      Where a motion to dismiss is granted, a district court should

10 provide leave to amend unless it is clear that the complaint could

11 not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine*

12 *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

13 **III. DISCUSSION**

14      The essence of Plaintiffs' claims against BAC is that

15 Plaintiffs reasonably relied on the Bank of America Bank Officer's

16 representations about the Oriana Defendants' financial capacity,

17 and based on those representations, entered into the loan agreement

18 and transferred the CMOs to Oriana.  Plaintiffs contend that BAC is

19 vicariously liable for the actions of its employee, the Bank

20 Officer.  (Opp. at 5.)

21      BAC's motion to dismiss raises three primary arguments in

22 response: BAC is a holding company that does not engage in banking

23 operations; BAC owed no duty of care to Plaintiffs and was not in a

24 fiduciary relationship with them; and Plaintiffs fail to plead

25 their fraud-related claims with particularity as required under

26 Rule 9(b).  (Mot. at 1-2.)

27      The Court notes at the outset that it has serious doubts about

28 the plausibility of the scenario alleged by Plaintiffs.  It seems

1    highly dubious that an individual or a corporation would depart

2    with something of great value on the basis of an alleged oral

3    representation made over the phone by someone of uncertain identity

4    who purports to work for a bank.  Also, while the purported "face

5    value" of the CMOs may be billions of dollars, they may in fact be

6    worthless.  Nevertheless, although the Court GRANTS BAC's motion as

7    to all claims for the reasons discussed below, the Court affords

8    Plaintiffs an opportunity to amend their complaint with respect to

9    certain claims.

10        **A.   BAC's Status as a Holding Company**

11        As a threshold matter, BAC contends that all of Plaintiffs'

12    claims against it fail because it is not a proper defendant.  BAC

13    states that it is a holding company that "does not make, purchase,

14    or service any loans or maintain bank accounts, or directly employ

15    any individuals that do so."   BAC therefore contends that the

16    Oriana Defendants could not have had an account with BAC, and that

17    it would not have been in a position to verify that they had the

18    financial resources available to fund Plaintiffs' loan.  (Mot. at

19    5.)

20        BAC requests that the Court take judicial notice of the fact

21    that it is a holding company.  (Dkt. 22.)  In support, it offers a

22    copy of a record available on the FDIC's website that classifies

23    Bank of America Corporation as a "bank holding company" and that

24    displays certain financial data about BAC.  (RJN Ex. 1.)

25    Additionally, BAC offers a copy of a list of holding companies from

26    the Federal Reserve's National Information Center website that

27    ranks BAC as the second largest holding company.  (RJN Ex. 2.)

28    This information, from two different government websites, "can be

1   accurately and readily determined from sources whose accuracy

2   cannot reasonably be questioned" and therefore "is not subject to

3   reasonable dispute."  Fed. R. Evid. 201(b).  The Court therefore

4   takes judicial notice of BAC's status as a holding company.

5       However, on its own, the fact that BAC is a holding company is

6   insufficient to dismiss it from this action.  BAC's exhibits do not

7   establish that bank holding companies categorically do not engage

8   in banking activities of the kind at issue in this case, and BAC

9   provides no other legal or factual support to show that either it

10  or other holding companies generally do not do so.  Thus, there is

11  nothing in the complaint or in BAC's motion and request for

12  judicial notice that indisputably establishes that the Bank Officer

13  who made alleged misrepresentations to Plaintiffs was not a BAC

14  employee.  *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th

15  Cir. 2011) (noting that on motion to dismiss, the court "may not,

16  on the basis of evidence outside of the Complaint, take judicial

17  notice of facts favorable to Defendants that could reasonably be

18  disputed").

19      Plaintiffs do not dispute BAC's holding company status,

20  however, and they concede that BAC was not directly involved in the

21  conduct alleged.  In their opposition, Plaintiffs state that they

22  "assume BOA Employee [the Bank Officer] is an employee of Bank of

23  America, N.A." (Opp. at 6.)  Bank of America, N.A. is a subsidiary

24  of BAC.[5]  However,

25  _____

26      [5] Plaintiffs request that the Court take judicial notice of
    the fact that Bank of America, N.A. is a subsidiary of BANA Holding

27  Corporation, which is itself a subsidiary of BAC.  (RJN ¶¶ 2-4.)
    BAC does not dispute the corporate structure as presented by

28  Plaintiffs, and it is clear from the Bank of America website—a
                                                    (continued...)

1
2
3
4
5
6
7
8
9
10
11
12
13
14

It is the general rule that a parent corporation and its subsidiary will be treated as separate legal entities. *Current Inc. v. State Board of Equalization*, 24 Cal. App. 4th 382, 391, 29 Cal. Rptr. 2d 407 (Ct. App. 1994); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 741, 80 Cal. Rptr. 2d 454 (Ct. App.1998). The alter ego doctrine is one exception to the rule where a parent corporation will be found liable for the actions of its subsidiary when there is (1) such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. *Automotriz Del Golfo De California v. Resnick*, 47 Cal. 2d 792, 796, 306 P.2d 1 (1957); *United States v. Healthwin-Midtown Convalescent*, 511 F. Supp. 416, 418 (C.D. Cal. 1981) *affirmed* 685 F.2d 448 (9th Cir.1982). Another exception to the general rule is when the subsidiary is the agent of the parent, which requires a showing that the parent so controls the subsidiary as to cause the subsidiary to be become merely the instrumentality of the parent. *Laird*, 68 Cal. App. 4th at 741, 80 Cal. Rptr. 2d 454. A parent corporation contributing funds to a subsidiary is not enough to find alter ego or agency liability. *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 539, 541, 99 Cal. Rptr. 2d 824 (Ct. App. 2000).

15
16
17
18
19
20

*Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) (dismissing Bank of America as a defendant because the plaintiff's allegation—that Bank of America purchased Countrywide—was limited to "claiming a financial link between the parent and subsidiary").

21
22
23
24

Here, Plaintiffs have pleaded no facts to support an alter ego claim or to show that BAC "so controls" Bank of America, N.A. such that the latter is "merely the instrumentality" of the former. Indeed, Plaintiffs' complaint treats "Bank of America" as a single

25
26
27
28

(...continued)
publically-accessible website whose reliability as a source of corporate information about Bank of America cannot reasonably be questioned—that Bank of America, N.A. is a wholly owned subsidiary of BAC.  *See* http://about.bankofamerica.com/en-us/our-story/our-company.html.

1  entity.  Plaintiffs argue that BAC should be held vicariously

2  liable for the Bank Officer's conduct because BAC's Code of Ethics

3  applies to BAC's subsidiary companies.[6]  Simply because BAC expects

4  its subsidiaries' employees to act according to the same ethical

5  standards as BAC employees does not create a sufficient link to

6  impose vicarious liability at this stage.  Given the legal

7  separation between parent companies and subsidiaries, and

8  Plaintiffs' concession that the Bank Officer with whom Plaintiff

9  Corneille allegedly spoke on the phone was a Bank of America, N.A.

10  employee, the Court dismisses BAC as an improper defendant.

11       However, Plaintiffs' argue that they should be granted leave

12  to amend their complaint to plead alter ego liability against BAC,

13  and to add BAC's subsidiaries, BANA Holding Corporation and Bank of

14  America, N.A., as doe defendants.  Whether such leave to amend

15  should be granted depends on whether Plaintiffs could state a claim

16  against those entities, or if such an amendment would be futile.

17  *See Corinthian Colleges*, 655 F.3d at 995 (stating that the

18  "standard for granting leave to amend is generous" and that where

19  "there is no evidence of delay, prejudice, bad faith, or previous

20  amendments . . . leave to amend turns on whether amendment would be

21  futile" (internal quotation marks and citations omitted)).  The

22  Court therefore next addresses the merits of Plaintiffs' claims

23

24  ─────────────────

25       [6] Plaintiffs request that the Court take judicial notice of
     the BAC Code of Ethics and its application to all of BAC's
26   subsidiaries.  (RJN ¶ 1.)  Although the Court could take judicial
     notice of the Code's existence, this does not mean that the Court
27   may take judicial notice of the inference Plaintiffs wish to
     establish—that BAC substantially controls Bank of America, N.A.
28   such that it should be liable for the latter's employee's conduct.
     Thus, the Code of Ethics is irrelevant.

against BAC, assuming, for the purpose of this analysis, that it remains a proper defendant.

### B.   Negligence Claim (Claim 2)

"Under California law, [t]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (internal quotation marks omitted). Plaintiffs allege that the Bank of America Bank Officer, acting as an agent for BAC, created a duty of care to Plaintiffs by assuring them of the Oriana Defendants' financial capacity to make the non-recourse loan. (Compl. ¶¶ 94-95.)  This is insufficient as a matter of law to state a negligence claim against either the Bank Officer or BAC, with whom Plaintiffs had no contractual relationship.

California courts have recognized that in some cases "suppliers and evaluators of information"—such as auditors and real estate appraisers—may have a duty to third parties who are not their clients but who are known and intended beneficiaries of the information they supply. *See Glenn K. Jackson*, 273 F.3d at 1199-1200 (citing *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (Cal. 1992)).  For example, in *Bily*, the California Supreme Court held that auditors have a duty to the "narrow class of persons who . . . may reasonably come to receive and rely on an audit report . . . . Such persons are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report." 3 Cal. 4th at 406-07.  The Court concluded that the auditors of a computer company's financial

1   statements therefore had a duty to the plaintiffs-investors who had

2   relied on the audit reports in deciding to invest in the company,

3   which quickly went bankrupt.  *Id.* at 377-78.  Although *Bily* focused

4   on auditors, the Court noted that "[a]ccountants are not unique in

5   their position as suppliers of information and evaluations for the

6   use and benefit of others.  Other professionals, including

7   attorneys, architects, engineers, title insurers and abstractors,

8   and others also perform that function."  *Id.* at 410.  It is

9   plausible that in some circumstances, a bank officer also fits into

10  this category of information suppliers.

11      However, the *Bily* Court expressly restricted the auditors'

12  duty and liability to claims based on negligent misrepresentation,

13  holding that the intended beneficiaries of an audit report "may not

14  recover on a pure negligence theory."  *Id.* at 406.  Only the

15  client, "i.e., the person who contracts for or engages the audit

16  services," may recover on a theory of general negligence.  *Id.*  The

17  only possible exception the Court noted is if the contract

18  expressly identified a particular third party as a third party

19  beneficiary.  *Id.* at n.16; *see also Glenn K. Jackson*, 273 F.3d at

20  1199-1200 (discussing negligent misrepresentation claims and third

21  party beneficiaries to a contract as the two exceptions to the *Bily*

22  rule that ordinarily information suppliers owe no duty to third

23  parties).

24      Plaintiffs do not allege that they were a Bank of America

25  client or a third party beneficiary to a contract between Bank of

26  America and the Oriana Defendants.  They were simply a third party

27  with an interest in the information that the Bank Officer had to

28  convey, which may or may not give rise to a duty under a theory of

12

1  negligent misrepresentation, but *Bily* forecloses Plaintiffs' pure

2  negligence claim.  The Court therefore dismisses this claim as to

3  BAC.  Because it would be futile for Plaintiffs to assert a

4  negligence claim against any BAC subsidiary for the same reasons,

5  the Court denies Plaintiffs leave to amend its negligence claim.

6      **C.   Breach of Fiduciary Duty (Claim 3)**

7      "To state a cause of action for breach of fiduciary duty, a

8  plaintiff must show the existence of a fiduciary relationship, its

9  breach, and damage proximately caused by that breach." *Roberts v.*

10 *Lomanto*, 112 Cal. App. 4th 1553, 1562 (Cal. Ct. App. 2003)

11 (internal quotation marks omitted).  Plaintiffs' allegations do not

12 support the existence of a fiduciary relationship between them and

13 the Bank Officer or BAC.

14     A fiduciary relationship is a relationship of confidence or

15 trust where one party is bound to act in good faith for the benefit

16 of the other party.   *Wolf v. Superior Court*, 106 Cal. App. 4th

17 25, 29-30 (Cal. Ct. App. 2003).  "Traditional examples of fiduciary

18 relationships in the commercial context include

19 trustee/beneficiary, directors and majority shareholders of a

20 corporation, business partners, joint adventurers, and

21 agent/principal." *Id.* at 30.  Under California law, a lender

22 generally does not owe a fiduciary duty to a borrower. *See Kim v.*

23 *Sumitomo Bank*, 17 Cal. App. 4th 974, 979 (Cal. Ct. App. 1993).  An

24 exception to this general rule is when a lender "excessively

25 controls or dominates the borrower." *Pension Trust Fund for*

26 *Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir.

27 2002) (citing *Credit Managers Ass'n v. Superior Court*, 51 Cal. App.

28 3d 352, 359-61 (Cal. Ct. App. 1975)).

1    Plaintiffs allege that through his assurances that the Oriana
2    Defendants were capable of funding the non-recourse loan, the Bank
3    of America Bank Officer "occupied a position of authority and trust
4    with Plaintiffs," and "[d]ue to the relationship of trust fostered
5    by Defendants [BAC] and [the Bank Officer], a fiduciary
6    relationship existed between Plaintiffs and these Defendants."
7    (Compl. ¶¶ 107, 108.)  These are conclusory allegations and they do
8    not illustrate any kind of relationship between Plaintiffs and the
9    Bank Officer that is akin to the examples listed above.  Moreover,
10   the Oriana Defendants were acting as the lenders in the transaction
11   at issue, and while it may be arguable that they owed a fiduciary
12   duty based on other factors, in their role as lenders they did not
13   owe Plaintiffs such a duty.  The Bank Officer's role was merely to
14   inform Plaintiffs that the Oriana Defendants had the financial
15   capacity to act as a lender.  There is no allegation that the
16   Oriana Defendants or the Bank Officer would have exercised control
17   over Plaintiffs' loan had it been made, so the exception to the
18   general rule for lenders does not apply.
19        The case cited by Plaintiffs, *Bear Stearns & Co. v. Buehler*,
20   432 F. Supp. 2d 1024 (C.D. Cal. 2000), is inapposite.  That case
21   involved the liability of a brokerage house to non-customers who
22   were clients of an independent investment advisor who stole his
23   clients' money.  The court stated that, "like a trustee, an
24   investment advisor may be considered a fiduciary."  *Id.* at 1027.
25   The court concluded that because the brokerage house lent its
26   credibility to the investment advisor and actively encouraged the
27   clients to invest with him, but subsequently failed to monitor his
28   investment activities, the brokerage house could be liable for

breaching a fiduciary duty to the clients.  *Id.* at 1027-29.  Here,
Plaintiffs do not allege that the Bank Officer actively encouraged
them to enter into a loan agreement with the Oriana Defendants.
Nor are the Oriana Defendants, as lenders, in a fiduciary role as
was the investment advisor in *Buehler*.  Plaintiffs do not allege
that they expected the Bank Officer to act for their benefit, or
that the Bank Officer agreed to do so.  For these reasons,
Plaintiffs fail to allege that a fiduciary relationship existed
between them and the Bank Officer such that BAC or its subsidiaries
could be held liable for a breach of that relationship.  No facts
could plausibly be alleged to state such a claim.  The Court
therefore dismisses this claim without leave to amend.

### D.   Claims for Fraud in the Inducement, Fraud, Intentional and Negligent Misrepresentation (Claims 5, 6, 7, 8)

Intentional misrepresentation is the same as "actual fraud."
*See Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296
(S.D. Cal. 2011) (citing *Anderson v. Deloitte & Touche*, 56 Cal.
App. 4th 1468, 1474 (Cal. Ct. App. 1997)).  "A cause of action for
fraud requires the plaintiff to prove (a) a knowingly false
misrepresentation by the defendant, (b) made with the intent to
deceive or to induce reliance by the plaintiff, (c) justifiable
reliance by the plaintiff, and (d) resulting damages."  *Glenn K.
Jackson*, 273 F.3d at 1201 (quoting *Wilkins v. Nat'l Broad. Co.*, 71
Cal. App. 4th 1066 (Cal. Ct. App. 1999)) (internal quotation marks
omitted).  The elements of a claim for fraud in the inducement of a
contract are the same as for actual fraud.  *Rodriguez*, 809 F. Supp.
2d at 1296 (citing Cal. Civ. Code § 1572; *Zinn v. Ex-Cell-O Corp.*,
148 Cal. App. 2d 56, 68 (Cal. Ct. App. 1957)).

15

1    Under California law, "negligent misrepresentation is . . . a
2 species of the tort of deceit.  Where the defendant makes false
3 statements, honestly believing that they are true, but without
4 reasonable ground for such belief, he may be liable for negligent
5 misrepresentation, a form of deceit." *Bily*, 3 Cal. 4th at 407.
6 Justifiable reliance on the misrepresentation by the plaintiff is a
7 key element of a cause of action for negligent misrepresentation.
8 *Id.* at 413.

9    "In alleging fraud or mistake, a party must state with
10 particularity the circumstances constituting fraud or mistake."
11 Fed. R. Civ. P. 9(b).  "It is well-established in the Ninth Circuit
12 that both claims for fraud and negligent misrepresentation must
13 meet Rule 9(b)'s particularity requirements." *Neilson v. Union*
14 *Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003);
15 *but see Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 418 (C.D.
16 Cal. 2012) (rejecting *Neilson* and the district court cases on which
17 it relied, and holding that Rule 9(b) does not apply to negligent
18 misrepresentation claims).  "[T]he pleader must state the time,
19 place, and specific content of the false representations as well as
20 the identities of the parties to the misrepresentation." *Odom v.*
21 *Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal
22 quotation marks omitted).  The Ninth Circuit has emphasized that
23 the "plaintiff must set forth what is false or misleading about a
24 statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*,
25 42 F.3d 1541, 1548 (9th Cir. 1994).  This means setting forth, "as
26 part of the circumstances constituting fraud, an explanation as to
27 why the disputed statement was untrue or misleading *when made*."
28 *Id.* at 1549.  "The fact that an allegedly fraudulent statement and

1  a later statement are *different* does not necessarily amount to an

2  explanation as to why the earlier statement was false."  *Id.*

3      All of Plaintiffs' fraud-based claims hinge on the core

4  allegation that the Bank Officer told Plaintiffs that the Oriana

5  Defendants had the ability to access a credit line and had the

6  independent financial capacity to fund the non-recourse loan,

7  knowing that the statements were false or with no reasonable

8  grounds for believing that the statements were true, with the

9  intention of inducing Plaintiffs to enter into the loan agreement

10  and transfer their CMOs to the Oriana Defendants.  (Compl. ¶¶ 123-

11  24, 131-32, 136, 141, 143.)  Plaintiffs allege that they

12  justifiably relied on the Bank Officer's representations in

13  deciding to enter the loan agreement and transfer the CMOS.

14  (Compl. ¶¶ 132, 137, 143.)

15      Plaintiffs allegations meet the "who, what, when, and where"

16  requirements of Rule 9(b).  Plaintiffs allege the contents of the

17  statements, and that they were made by a person named Tom Hazlet or

18  Tom Hazlit during a conference call that took place on February 9

19  around 7:56 a.m., and that the call originated from a number

20  associated with Bank of America.  (Compl. ¶¶ 33-35, 37.)  Although

21  BAC argues that Plaintiffs' "cannot identify the speaker who

22  allegedly made the misrepresentations during the phone call" (Mot.

23  at 10), Plaintiffs do allege the name of the speaker.  Further

24  information about how exactly his name is spelled and his specific

25  position and department are facts that can be established through

26  discovery.

27      BAC also argues that Plaintiffs' allegation that the call

28  originated from the number 800-432-1000 does not support the

17

1  allegation that the call came from Bank of America.  Plaintiffs
2  request that the Court take judicial notice of the fact that this
3  number belongs to Bank of America, and in support, they reference a
4  printout from the website 411.com.  (RJN ¶ 5.)  Although this
5  website does not support taking judicial notice of Bank of
6  America's ownership of the number, Bank of America's own website
7  lists that phone number on its contact page.  *See*
8  https://www.bankofamerica.com/contactus/contactus.go?topicId=checki
9  ng_savings.  Although Plaintiffs' inexplicably did not proffer that
10  website as support, the Court may take judicial notice of this fact
11  on its own, since the complaint "expressly refers to and
12  necessarily relies on" the phone number as belonging to Bank of
13  America.  *See Corinthian Colleges*, 655 F.3d at 999 (stating that
14  courts may consider evidence not attached to the complaint but "on
15  which the complaint necessarily relies if: (1) the complaint refers
16  to the document; (2) the document is central to the plaintiff's
17  claim; and (3) no party questions the authenticity of the
18  document").  BAC can hardly claim that the accuracy of Bank of
19  America's website can reasonably be questioned.  Thus, taking the
20  allegations in the complaint as true, as the Court must on a motion
21  to dismiss, Plaintiffs' have sufficiently alleged that the speaker
22  on the phone was a representative of Bank of America.

23      However, there are two reasons why Plaintiffs' fraud-based
24  claims fail.  First, the evidence submitted as exhibits to
25  Plaintiffs' complaint flatly contradicts the allegation that
26  Plaintiffs relied on and were induced by the Bank Officer's
27  statements when entering into the loan agreement with the Oriana
28  Defendants.  The loan agreement, which is signed by both Plaintiff

Corneille and Defendant Chappell, is dated as being effective on February 1, 2012. However, the alleged phone call with the Bank Officer did not occur until February 9, 2012. (Compl. ¶¶ 33, 41 & Ex. 1.) The *Bily* Court emphasized reliance as a key element of a negligent misrepresentation claim, and it is a necessary element of all of Plaintiffs' fraud-based claims. *See Bily*, 3 Cal. 4th at 413 (stating that "the gravamen of the cause of action for negligent misrepresentation" against information suppliers by non-client third parties "is actual, justifiable reliance on the representations" made by the defendant). Given that the loan contract between Plaintiffs and the Oriana Defendants was already effective prior to the time the Bank Officer made his alleged misrepresentations, it is implausible that Plaintiffs relied on those statements when they chose to enter into the loan agreement, and the fraud claims are dismissible on this basis. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("We have held that a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims.").

Moreover, Plaintiffs allege no facts to show that any reliance was justifiable. They do not allege what kind of evidence the Bank Officer relied on in making his statements, nor do they allege that they requested any supporting documentation from the Bank Officer or any additional information about his ability to comment on the Oriana Defendants' financial resources. Plaintiffs are purportedly sophisticated parties who owned complex securities and were represented by counsel in their transaction with Oriana. Simply because they failed to do adequate due diligence does not make the Bank Officer's statements fraudulent, and it makes their alleged

19

reliance on those statements less justifiable.  *See Bily*, 3 Cal.
4th at 413 (emphasizing the "indispensability of justifiable
reliance" on the misrepresentations); *see also In re GlenFed*, 42
F.3d at 1198 (noting that one of the policy concerns discussed by
the *Bily* Court as relevant to the existence of a duty is that
"parties should be encouraged to rely on their own ability to
protect themselves through their own prudence, diligence and
contracting power").

The second reason Plaintiffs' fraud-based claims must be
dismissed is because they fail to plead those claims with the level
of particularity required by Rule 9(b).  Specifically, Plaintiffs
do not allege why the Bank Officer's statements were false at the
time they were made.  *See In re GlenFed*, 42 F.3d at 1548-49.
Plaintiffs' only allegation that the Bank Officer's statements were
false is that the Oriana Defendants later "could not obtain a
credit line to fund the [non-recourse loan], and could not
independently fund the [non-recourse loan] themselves." (Compl. ¶
124.)  Plaintiffs allege that the Oriana Defendants admitted in an
August 6, 2012 email that they had misrepresented their ability to
fund the loan.  (Compl. ¶ 76.)

Merely because at a later time the Oriana Defendants did not
disburse the loan funds and stated that they did not have the
capacity to do so does not mean that the Bank Officer's statements
about the Oriana Defendants' financial resources were untrue at
that earlier time.  The *GlenFed* court distinguished between later
inconsistent statements that show that an earlier statement has
always been false and later inconsistent statements that do not do
so because of the possibility of intervening events.  *In re*

*GlenFed*, 42 F.3d at 1548-49.  The latter scenario, the court noted, may be particularly relevant in securities fraud cases, where "an event internal to the company, such as the reevaluation of assets" may be the actual cause of the apparent discrepancy between an allegedly false statement and a later inconsistent statement.  *Id.*

In such cases, the court noted, the "plaintiff would generally be required to elaborate circumstances contemporary to the alleged false statement to explain how and why the statement was misleading when made."  *Id.* at 1549.  Plaintiffs have not done so here.  They allege no facts to show that the Bank Officer had access to other information at the time of the phone call that would have contradicted his assessment of the Oriana Defendants' financial resources.  Although the *GlenFed* court acknowledged that a "statement by the defendant along the lines of 'I knew it all along' might suffice" to plead falsity with the requisite particularity, and although the Oriana Defendants' alleged admission that they had misrepresented their financial status might constitute such a statement, that admission cannot be imputed to the Bank Officer, nor does it show that the Bank Officer "knew it all along."  *Id.* at 1549 n.9.

In sum, the Court dismisses Plaintiffs' four fraud-based claims for the foregoing reasons.  However, because Plaintiffs have not previously amended their complaint, the Court will grant them an opportunity to do so to plead these claims with greater particularity.  The Court is doubtful whether there are any facts that could resuscitate these claims given the timing of the phone call relative to the effective date of the loan agreement. Plaintiffs should therefore bear in mind that failure to plead any

1   additional facts to show that they plausibly relied on the Bank

2   Officer's February 9th statements—despite their pre-existing

3   obligation to transfer the CMOs according to the February 1st

4   agreement—may ultimately foreclose even their amended claims.

5   Additionally, any amended complaint must provide specific details

6   identifying the CMOs and setting forth the fair market value of the

7   CMOs at the time of the filing of the complaint, along with the

8   basis of the valuation.   Further, any amended pleading must attach

9   and incorporate any telephone records allegedly evidencing the

10  telephone call in question.   These orders are made because the

11  information may bear on the amount in controversy and the

12  plausibility of the allegations.

13  **E.    Conspiracy (Claim 9)**

14          "Under California law, it is well settled that there is *no*

15  *separate tort* of civil conspiracy, and there is *no civil action* for

16  conspiracy to commit a recognized tort unless the *wrongful act*

17  itself is committed and damage results therefrom." *Harrell v. 20th*

18  *Century Ins. Co.*, 934 F.2d 203, 208 (9th Cir. 1991) (internal

19  quotation marks omitted) (citing *Kerr v. Rose*, 216 Cal. App. 3d

20  1551, 1564 (Cal. Ct. App. 1990)).   "[T]he major significance of the

21  conspiracy lies in the fact that it renders each participant in the

22  wrongful act responsible as a joint tortfeasor for all damages

23  ensuing from the wrong, irrespective of whether or not he was a

24  direct actor and regardless of the degree of his activity." 

25  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th

26  503, 511 (Cal. 1994) (internal quotation marks omitted).   "By its

27  nature, tort liability arising from conspiracy presupposes that the

28  coconspirator is legally capable of committing the tort, i.e. that

1   he or she owes a duty to plaintiff recognized by law and is

2   potentially subject to liability for breach of that duty." *Id.*  A

3   plaintiff must "clearly allege specific action on the part of each

4   defendant that corresponds to the elements of a conspiracy . . . .

5   [The] plaintiff cannot indiscriminately allege that conspiracies

6   existed between and among all defendants." *AccuImage Diagnostics*

7   *Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal.

8   2003).

9       Here, Plaintiffs' conspiracy claim is pled as a separate cause

10  of action, and it states only that "all of the Defendants, and each

11  of them knowingly and willfully conspired and agreed among

12  themselves to defraud Plaintiffs and obtain custody and control

13  over [Plaintiffs'] CMOs." (Compl. ¶ 146.)  Plaintiffs allege that

14  the acts in furtherance of the conspiracy include "inducing

15  Plaintiffs to enter into the [loan agreement] by [the Oriana

16  Defendants] representing they could obtain a credit line for the

17  [loan] or fund the [loan] themselves" and "inducing Plaintiffs to

18  transfer [their] CMOs into the control and custody of [the Oriana

19  Defendants] for the alleged purpose of obtaining the [loan],

20  pursuant to the [loan agreement]." (Compl. ¶ 147(a), (b).)

21  Although the Bank of America Bank Officer is listed as a defendant

22  under the heading for the conspiracy claim, the allegations do not

23  specifically mention the Bank Officer's actions, and BAC is

24  entirely absent from this claim.  Plaintiffs therefore fail to

25  allege any specific action on the part of any Bank of America

26  defendants with respect to the alleged conspiracy.

27      Additionally, BAC argues that Plaintiffs' conspiracy claim

28  fails because BAC does not owe Plaintiffs any underlying duty.

1   Although this is true with respect to negligence and fiduciary

2   duty, the Bank Officer, and therefore potentially BAC or its

3   subsidiary, Bank of America, N.A., may owe Plaintiffs a duty in the

4   context of Plaintiffs' fraud-based claims.  *See Bily*, 3 Cal. 4th at

5   406-07 (holding that auditors may be held liable to the

6   specifically intended beneficiaries of an audit report under a

7   theory of negligent misrepresentation).  Thus, as with Plaintiffs'

8   fraud-based claims, the Court dismisses Plaintiffs' conspiracy

9   claim against BAC, but grants Plaintiffs leave to amend the claim

10  in the context of those fraud claims.

11       **F.   Accounting (Claim 11)**

12       As BAC contends, an accounting is generally an equitable

13  remedy, rather than a distinct cause of action.  *See Pantoja*, 640

14  F. Supp. 2d at 1191.  However, "an accounting can be a cause of

15  action when a defendant has a fiduciary duty to a plaintiff which

16  requires an accounting, and that some balance is due to the

17  plaintiff that can only be ascertained by an accounting.  An

18  accounting is not required when the amount in dispute is certain or

19  ascertained by a simple calculation."  *Id.* at 1191-92 (internal

20  citations omitted); *see also Civic Western Corp. v. Zila*

21  *Industries, Inc.*, 66 Cal. App. 3d 1, 14 (Cal. Ct. App. 1977) ("A

22  suit for an accounting will not lie where it appears from the

23  complaint that none is necessary or that there is an adequate

24  remedy at law.  An accounting will not be accorded with respect to

25  a sum that plaintiff seeks to recover and alleges in his complaint

26  to be a sum certain.").

27       Neither BAC nor the Bank Officer owed Plaintiffs a fiduciary

28  duty.  Nor do Plaintiffs allege that BAC or the Bank Officer

1   received the CMOs or any amount of money related to the CMOs.

2   Plaintiffs allege only that the Oriana Defendants received and

3   failed to return the CMOs.  Further, Plaintiffs seek to recover a

4   sum certain—the face value of the CMOs, or $2,503,562,222.  (*See*

5   Compl. ¶¶ 125, 133, 138, 150.)  For these reasons, the Court

6   dismisses Plaintiffs' request for an accounting against BAC,

7   without leave to amend.

8   **IV.   CONCLUSION**

9        For the foregoing reasons, the Court GRANTS the motion to

10  dismiss as to all claims against BAC.  However, the Court grants

11  Plaintiffs leave to amend their complaint to add an allegation of

12  alter ego liability against BAC and to add Bank of America, N.A.

13  and BANA Holding Corporation as defendants.  Additionally, the

14  Court grants leave to amend the four fraud-based claims (Claims 5,

15  6, 7, 8) to plead, if possible, additional facts to meet Rule

16  9(b)'s particularity requirements, and to amend the conspiracy

17  claim (Claim 9).  Because it would be futile to amend the claims

18  for negligence (Claim 2), breach of fiduciary duty (Claim 3), and

19  accounting (Claim 11), the Court dismisses those claims without

20  leave to amend.  The conversion claim (Claim 10) is also dismissed

21  without leave to amend, per Plaintiffs' agreement that it does not

22  apply to BAC.

23  IT IS SO ORDERED.

24

25  Dated: February 19, 2013

26                                      DEAN D. PREGERSON
                                        United States District Judge
27

28