O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL ACQUISITIONS NETWORK, a Wyoming corporaiton; SHAWN CORNEILLE, an individual,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA CORPORATION, a Delaware corporation; ORIANA CAPITAL PARTNERS,LLC, a Connecticut limited liability company; ZANCO, a company of unknown business form, HLB FINANCIAL, LLC, a company of unknown form; W/C INVESTMETN HOLDINGS INC., a Florida corporatin; DEXTER CHAPPELL, an individual; VALERIE CHAPPELL, an individual; JON LEARY, an individual; GLEN McINERNEY also known as LARRY BENNETT, an individual; CHRISTOPHER RAY ZANCO, an individual; BERNARD WOODSON, an individual,<br><br>　　　　　　Defendants.<br>_____ | Case No. CV 12-08758 DDP (CWx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)**<br><br>[Dkt. No. 65] |

　　　Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(2)

("Motion"). Having considered the parties' submissions, the Court denies the Motion and adopts the following Order.

**I.   BACKGROUND**

Plaintiffs are Global Acquisitions Network ("GAN") and Shawn Corneille. (First Amended Complaint ("FAC") ¶¶ 2-3.) Defendants are Oriana Capital Partners ("Oriana"), Dexter Chappell, and Jon Leary (sometimes referred to herein as the "Oriana Defendants")[1]. (Id. at ¶¶ 4-7.) Relevant to this motion, Defendant Jon Leary resides in the State of Connecticut and is licesnsed to practice law there. Mr. Leary acted as legal counsel for Oriana and Dexter Chappell, and engaged in business in the State of California. (Id. at ¶ 7.)

Plaintiffs allege the following facts. Plaintiffs are the owners of two collateralized mortgage obligations ("CMOs") that have a combined face value of approximately $2.5 billion. (Id. at ¶ 10.) Plaintiffs sought opportunities where the CMOs could generate financial returns by using them as collateral on a loan. (Id. at ¶ 12.) Having no experience in that particular field, the Plaintiffs sought help and were introduced to Defendants Leary and Chappell. (Id. at ¶ 13.) Defendants Chappell and Leary approached Oriana Capital Partners ("Oriana") who agreed to use the CMOs as collateral for an approximately $18 million non-recourse loan ("NRL") to Plaintiffs. (Id. at ¶ 15.) Before consummating the agreement, the Plaintiffs requested assurances from the Oriana Defendants that Oriana had the ability to fund the NRL. (Id. at ¶ 21.) To address Plaintiffs' concerns, a conference call was

---

[1] Bank of America was originally a defendant, but was dismissed on February 19, 2013. (Dkt. No. 38.)

2

allegedly held on February 9, 2012, at approximately 7:56 a.m., between Plaintiffs, the Oriana Defendants, and a Bank of America Bank Officer whose name Plaintiffs believe was Tom Hazlet or Hazlit. (Id. at ¶ 25.) The call was identified as originating from the number 800-432-1000, which Plaintiffs allege is a Bank of America phone number. (Id. at ¶ 24.) During this call, both the Oriana Defendants and the Bank Officer, Hazlet or Hazlit, told Plaintiffs that Bank of America was the primary financial institution with which Oriana did business and that it would be the institution funding the credit line for Plaintiffs' non-recourse loan. (Id. at ¶ 28.) Additionally, the Bank Officer stated that Oriana had access to a credit line and had the financial resources to fund the loan. (Id.)

Based on these assurances from the Oriana Defendants and the Bank of America Bank Officer, Plaintiffs decided to transfer the CMOs to Oriana. The CMOs were delivered to the Fidelity account designated by Oriana between February 27 and 29, 2012, and they confirmed receipt of the CMOs. (Id. at ¶¶ 33-35; Exh. 2.) On March 12, 2012, Oriana Defendants told Plaintiffs that they would be unable to fund the loan within the contractually required time period, so the parties agreed to extend the payout deadline to April 18. (Id. at ¶ 41.)

By June 2, Oriana still had not made the loan to Plaintiffs. (Id. at ¶¶ 47-48.) Over the next couple of months, the parties communicated, primarily through counsel, by phone and email about the status of the loan and the CMOs. (Id. at ¶¶ 47-55.) Mr. Chappell and Mr. Leary would provide different reasons for the delay in payment. (Id.; Exh. 5.) Over the course of this

3

communication, Plaintiffs learned that the Fidelity account to which they had transferred the CMOs was actually owned by a third party. (Id. at ¶¶ 63-65.) Oriana's name had been added to the account, but the Oriana Defendants informed Plaintiffs that, as of July 7, 2012, the account had been closed and Oriana was unable to obtain any details about the closure because Defendant Chappell was not listed as an account holder. (Id. at ¶ 68.) At that time, the Oriana Defendants stated that they did not know what had happened to the CMOs or where they were located. (Id. at ¶ 86.)

Eventually, in an August 6, 2012, email,[2] counsel for the Oriana Defendants admitted that they misrepresented their ability to fund the loan through a Bank of America credit line or with their own funds, but contended that the CMOs were never received in the Fidelity account. (Id. at ¶ 82.) As of the time of the filing of Plaintiff's original complaint in October 2012, the Oriana Defendants still had not paid the loan or returned the CMOs, and Plaintiffs did not know where the CMOs were located. (Id. at ¶ 86.)

On February 9, 2013, Defendant Bank of America filed a motion to dismiss which the Court granted with leave to amend the complaint. (Dkt. No. 38.) After the FAC was filed, Bank of America filed a second motion to dismiss. (Dkt. No. 50.) Its motion was granted on June 7, 2013. (Dkt. No. 60.)

Defendant Jon Leary now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

---

[2] This August 6, 2012 email is not included with the other email correspondence attached as the fifth exhibit to Plaintiffs' complaint.

4

**II.  LEGAL STANDARD**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. Pebble Beach Co. v. Caddy, F.3d 1151, 1154 (9th Cir. 2006). To demonstrate a court's jurisdiction over a defendant, a plaintiff must show that personal jurisdiction is (1) permitted under the applicable state's long-arm statute and that (2) the exercise of jurisdiction does not violate federal due process. Id. California's long-arm statute, Cal. Code. Civ. Pro. § 410.10, allows personal jurisdiction on any basis not inconsistent with the Constitution. Cal. Code. Civ. Pro. § 410.10.

A federal district court may exercise either general or specific jurisdiction over a non-forum defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Demonstrations of general or specific jurisdiction require that the plaintiff make a prima facie showing of jurisdictional facts, facts that if taken as true would support jurisdiction and withstand the motion to dismiss. Id.

Any disputed facts for the purposes of the motion to dismiss are construed in favor of the plaintiff. Id. However, a court may permit discovery to help determine whether it has personal jurisdiction, especially in circumstances where pertinent facts are controverted. Data Disc, Inc., v. Systems Tech. Assoc. Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

**III. DISCUSSION**

Mr. Leary moves to dismiss the complaint against him for lack of personal jurisdiction. He argues that he maintains no contacts

with California. Mr. Leary claims to be a lifelong resident of the State of Connecticut, who has never solicited or conducted business outside of Massachusetts and Connecticut. (Motion to Dismiss at 4.) Moreover he contends that he has only visited California once, in 1991, as a tourist and that his only contact with the Plaintiffs was through email and one phone call. (Mot. to Dismiss at 4.)

The Plaintiffs appear to concede that the Court lacks general jurisdiction; instead, the Plaintiffs argue that the FAC has sufficiently alleged that this Court can exercise specific jurisdiction over Mr. Leary.

**A. Specific Jurisdiction**

Under Ninth Circuit law, a court may exercise specific jurisdiction over a nonresident defendant when (1) a defendant purposefully directs her activities or consummates some transaction with the forum or resident thereof, or performs some act by which she purposefully avails herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, (2) the plaintiff's claim arises out of or relates to the defendant's forum related activities, and (3) the exercise of jurisdiction comports with fair play and substantive justice, i.e. it must be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801-02 (9th Cir. 2004).

Depending on the type of claim made by a plaintiff, purposeful direction takes on different meanings. Compare Dole Foods Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)(explaining how personal jurisdiction in intentional tort cases is a question of purposeful direction which is evaluated under the "effects test" (quoting Calder v. Jones, 465 U.S. 783 (1984))), with

6

Schwarzenegger, 374 F.3d at 803 (explaining that personal jurisdiction in contracts cases is a question of purposeful availment to the privileges of doing business in the forum state).

If a plaintiff can establish the first two prongs, then the defendant must come forward with a "compelling case" that the exercise of jurisdiction would be unreasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

### i. Purposeful Direction

Here, the Plaintiffs argue that Mr. Leary purposefully directed his activities toward residents of California. (See Mot. to Dismiss at 9.) A purposeful direction analysis is relevant for tort claims. Schwarzenegger, 374 F.3d at 803. To demonstrate purposeful direction, the first prong of the test determining whether a court may exercise specific jurisdiction over a defendant, a plaintiff must show that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which caused harm that the defendant knows is likely to be suffered in the forum state. Id.(citing Calder v. Jones, 465 U.S. 783 (1984)).

The FAC alleges that Mr. Leary made representations to the Plaintiffs that the Oriana Defendants would be able to fund the CMOs; however, Mr. Leary knew that the Oriana Defendants' ability to pay was contingent on a third party. (FAC at ¶¶ 22-26, 49-50.) Moreover, the FAC alleges that the Plaintiffs suffered monetary losses due to Mr. Leary's representations. (Id. at ¶ 90.) These facts establish that Mr. Leary's actions meet the first and third prongs of "purposeful direction": that he acted intentionally and that his actions caused harm to the Plaintiffs in the forum state.

7

The issue is whether Mr. Leary's actions were "expressly aimed" at the forum state.

"Expressly aimed" requires "more" than mere foreseeability; "expressly aimed" requires that the relevant action in the forum state be individually targeted to a forum resident, so that the defendant can reasonably anticipate being hauled into court in the forum state. Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082, 1088 (9th Cir. 2000); Calder v. Jones, 465 U.S. 783, 790 (1984). For example, in Dole, the defendants were found to have expressly aimed their actions at California, the forum state, because they knew the decision makers they were communicating with were located in California. 303 F.3d at 1111; see also Data Disc, Inc, 557 F.2d at 1288 ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement.").

Here, while Mr. Leary did not actively solicit business in California, his actions were still expressly aimed at the forum state. Like the defendants in Dole, Mr. Leary knew the Plaintiffs had California contacts because every email sent to Mr. Leary contained a signature block with a California address. (FAC, Exh. 5.) These indicia of the Plaintiffs' California contacts created a reasonable expectation that Mr. Leary could be hauled into court in California. Mr. Leary is correct that his status as a Connecticut resident does not allow this Court to exercise general jurisdiction over him; however, Mr. Leary's communications targeted California residents and are the basis of the present cause of action, thereby providing a basis for this Court to exercise specific jurisdiction.

8

Mr. Leary contends that any communication with the Plaintiffs in California occurred through email and telephone and is therefore insufficient to establish personal jurisdiction. However, courts have held that limited personal jurisdiction may be based on email contacts that are intentionally directed to residents of the forum state and then cause harm in the forum state. See Felland v. Clifton, 682 F.3d 665, 674-76 (7th Cir. 2012)(fraudulent misrepresentations sent by email, regular mail, and telephone can be the basis for specific jurisdiction). Here, the Plaintiffs have attached multiple email exchanges between themselves and Mr. Leary; these exchanges not only support the negligence and fraud-based claims against Mr. Leary, but also establish sufficient contacts to allow this Court to exercise specific jurisdiction.

### ii. Arising From

Under the second prong of the specific jurisdiction test, whether the defendant's actions give rise to the current action is measured in terms of "but for" causation. Bancroft, 223 F.3d at 1088. Here, the Plaintiffs allege in the FAC that Mr. Leary's representation about the Oriana Defendants' ability to pay was essential to the Plaintiffs in deciding whether to transfer the CMOs. (FAC at ¶ 30.) Mr. Leary does not contend that his communications with Plaintiffs caused the alleged harm; Mr. Leary only argues that his California contacts are insufficient to grant this Court jurisdiction.

### iii. Reasonableness

If both of these prongs are met, the burden falls on the defendant to show that the exercise of jurisdiction would be unreasonable. Felland, 682 F.3d at 674-76. In his Motion to

Dismiss, Mr. Leary alleges that his status as a Connecticut domiciliary means this Court cannot exercise personal jurisdiction over him; however, Mr. Leary does argue why exercising personal jurisdiction over a Connecticut domiciliary would be unreasonable. The Court declines to speculate a reason why exercising personal jurisdiction would be unreasonable, but notes that nothing in Mr. Leary's papers or in the FAC suggests that it would not be reasonable.

**IV. CONCLUSION**

For the above reasons, Leary's motion to dismiss for lack of personal jurisdiction is DENIED. The Plaintiffs have alleged facts sufficient to demonstrate that Mr. Leary possessed the necessary minimum contacts with California for this Court to exercise personal jurisdiction over him.

IT IS SO ORDERED.

Dated: July 9, 2013

DEAN D. PREGERSON
United States District Judge